UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

        D&W Ltd., LLC,

              Debtor.
_____/

Case No. 12-41349
Chapter 7
Hon. Walter Shapero

**OPINION GRANTING MOTION TO DISMISS (Docket No. 10)**

On Saturday, January 21, 2012 ("Petition Date"), D & W Ltd., LLC ("Debtor") filed a voluntary petition under Chapter 7 of Title 11 of the United States Code.

On January 30, 2012, Trumpps Properties, LLC ("Properties"), JSGC Trumpps, LLC ("Operating"), and Jason Saad and together with Properties and Operating, the "Secured Creditors," filed a Motion to Dismiss under 11 U.S.C. §§ 305(a) and 707(a), requesting dismissal on grounds that (i) the Bankruptcy Petition was filed without corporate authority, (ii) the Bankruptcy Petition was filed in bad faith, (iii) the Debtor is engaged in nothing more than an (alleged) two party dispute, and (iv) the State Court previously appointed a receiver to resolve this matter. The hereinafter recited relevant facts are not substantially contested.

The Debtor, a Michigan limited liability company, was the operating entity of a gentlemen's club, commonly known as Trumpps ("Business"), located in Detroit, and at times relevant here owned 66.6% by Kevin Ditmore and 33.3% by Curtis Ditmore and together with Kevin, the "Members." Kevin Ditmore was named the original Managing Member in the Debtor's Operating Agreement, dated August 30, 1997.

The Debtor borrowed from Comerica Bank ("Bank"), and incident thereto the Debtor gave the Bank a blanket security interest on its assets. When the Debtor defaulted, the Bank commenced a State Court lawsuit ("State Court Case") in 2009. On June 4, 2010, the State Court appointed

Michael Connley as Receiver ("Receiver") over the Debtor's sales and revenues as provided in an Order Appointing Limited Receiver. On August 6, 2010, the State Court expanded the Receiver's authority to include the power to sell the Debtor's assets in an Order Expanding Powers of Limited Receiver.

On December 4, 2010, the State Court entered a money judgment in favor of the Bank against this Debtor for $800,553.80 and other defendants, including Kevin and Curtis Ditmore. Thereafter, the Secured Creditors acquired the Bank's interest in (a) the loan by Bank to the Debtor, including the underlying promissory notes, mortgages, and (b) the Judgment. The Secured Creditor also thereafter acquired from Dominic Siwik a note, security interest and mortgage that the Debtor had given him. The result of those transactions was that the Secured Creditors received liens against all of the assets of the Debtor to secure total debts in excess of $2,789,000.00.

From April 2011 through November 2011, and subject to the approval of the Michigan Liquor Control Commission ("MLCC") of the transfer of the liquor license, the Secured Creditors rather than the Receiver operated the Business with the consent and participation of the Debtor.

On September 9, 2011, with the Debtor's consent, an Asset Sale Purchase Agreement ("ASPA") was entered into by the Debtor with Operating as the Purchaser, for the sale to it of all the Debtor's assets, including its cabaret and liquor licenses. Contemporaneously, as hereinafter detailed, the Members (a) irrevocably assigned their member voting rights in the Debtor to Nevada Saad, an individual related to the Secured Creditors, and (b) unanimously amended the Operating Agreement to irrevocably appoint Nevada Saad as the Debtor's Managing Member. Also contemporaneously, the Debtor executed a bill of sale in favor of the Secured Creditors, which

2

12-41349-wsd    Doc 54    Filed 03/26/12    Entered 03/26/12 15:06:55    Page 2 of 9

transferred all its assets, except the licenses, to the Secured Creditors, subject only to the approval of the transfer of the liquor license by the MLCC.

Following execution of the ASPA, differences and arguments arose between Kevin Ditmore and the other parties relating to management, operations, and other matters relative to the Business pending the closing and securing of MLCC approval, to the point where the Business ceased operation on or about November 18, 2011. The process of obtaining the required MLCC approval nevertheless continued.

In order to deal with and solve any liquor license issues and resume operations at the Business, the Secured Creditors returned to the State Court. That Court renewed and expanded the powers of the Receiver by virtue of an order dated December 2, 2011, "Renewed Receiver Order," which required the Debtor to:

> work with the [MLCC] to transfer all existing liquor licenses and permits of [the Debtor] to the purchaser, [Operating], and to execute all necessary documents, applications, forms and other documents to effectuate the transfer.

and, also prohibited the Debtor's Members or their agents from (and said in reference to same):

> removing, secreting, comingling, expending, dissipating, using or otherwise transferring or conveying the company, and with limitation: (a) are enjoined from interfering with the Receiver's taking control of the company in connection herewith, (b) are enjoined from interfering with the operation of the company by the Receiver, and (c) are enjoined from interfering with the Receiver's performance of its rights and duties under this Order.

Thereafter, on December 14, 2011, the State Court entered a stipulated order ordering the Debtor, its Members, together with Kevin and Curtis Ditmore, to request the MLCC to release the liquor license from escrow in order to resume operations at the Business. Pursuant to those orders, the Receiver selected a manager proposed by the Secured Creditors for the Business.

3

Secured Creditors allege that (a) despite those Receiver Orders, Kevin Ditmore attempted to remove the liquor license from escrow and have a different manager proposed by him approved by the MLCC to manage the Business; and (b) on Thursday, January 19, 2012, (two days before the Saturday Bankruptcy filing) the Secured Creditors' liquor control counsel communicated with Sharon Martin, Director, Licensing Division, MLCC, and informed her of the Receiver Orders; and (c) at that time, Ms. Martin informed the Secured Creditors' liquor control counsel that Kevin Ditmore and his proposed management company had arranged to meet with her later that same day to request the release to him of the liquor license from escrow; and (d) since Ms. Martin was aware of the Receiver Orders, she refused to meet with Kevin Ditmore and his proposed management company; and she informed the Secured Creditors' liquor control counsel that the liquor license would be released from escrow in the name of the Receiver, during the week of January 23, 2012. It does not appear that any of the State Court orders were appealed.

On Saturday, January 21, 2012, Kevin Ditmore caused the Debtor to file a Chapter 7 Bankruptcy Petition, but did not file at that same time any Schedules or the Statement of Financial Affairs ("SOFA"), or the statement required by Fed.R.Bankr.P. 2016(b), or the statement required by E.D. Mich. LBR 1074-1.

Hours after the filing of the Bankruptcy Petition, the Debtor's bankruptcy counsel states he sent a fax, with evidence of the filing, informing the Secured Creditors' State Court case counsel, "The company is under bankruptcy protection as are all of its assets including the liquor license. Please do not attempt to have your client make use of that license and allow it to remain in escrow until further ordered by the Bankruptcy Court."

The instant Motion to Dismiss was filed shortly after the bankruptcy case was filed. The Court held an initial expedited hearing at which it became apparent there was a threshold issue as to whether there had existed proper authority to have initially filed the case. As such, it was a question that could and should be decided prior to setting what appeared to be likely extensive and costly evidentiary hearings on the other grounds asserted for dismissal. To that end, the Court ordered limited briefing on only the authority issue.

The salient and essentially uncontroverted facts directly related to that issue are:

(1) The Bankruptcy Petition was signed by Kevin Ditmore as President and Managing Member of the Debtor, declaring under oath that he was authorized to file the petition on behalf of the Debtor.

(2) The Debtor is an LLC organized and existing under Michigan law, and had an operating agreement. The Operating Agreement of this Debtor lodges Management in a Manager appointed by and to serve at the will of the members and requires that in certain kinds of decisions, such as sale of the Business for instance, approval of all or a majority or in some cases 60% or all of the members of this Debtor. The agreement also permits actions to be taken by written consent of the required number of member interests, in lieu of an actual meeting. In the September 9, 2011, documents hereinafter referred to as noted Kevin and Curtis Ditmer represented themselves to have been the holders of 100% of the membership interests in this Debtor, and they do not claim otherwise in these proceedings.

(3) At the time of filing, this Debtor also filed a required Bankruptcy Petition Cover Sheet signing it in his capacity as President of the Debtor.

(4) The Petition, when filed, was not accompanied by the "Filing Authorization for a Corporation, a Partnership or entity Other than an Individual," mandated by E.D. Mich. LBR 1074-1, which also states that the subject papers must be filed within 14 days after filing the Petition, which would have been on or about February 4, 2012. On February 6, 2012, such an authorization was filed. It is dated February 3, 2012, (and thus after the Motion to Dismiss was filed on January 30, 2012) and is signed by Kevin Ditmore as President of the Debtor, declaring under penalty of perjury that (a) he is the Managing Member of the Debtor; (b) on January 21, 2012, the Board of Directors of the Debtor, at a special meeting duly called and held on that date, passed a resolution authorizing Kevin Ditmore, President and Managing Member of the Debtor, to file a Chapter 7 voluntary bankruptcy case, and authorizing other actions incident thereto. (Given that the referred to purported meeting was held on January

5

21, 2012, the required document certainly could have been filed with the Petition, which was filed that same day.) On September 9, 2011, the following documents and agreements had been entered into and executed:

(a) The referred to ASPA signed by Kevin and Curtis Ditmore as the Members of this Debtor as Seller, and by Jason Saad as Managing Member of Operator, the Purchaser, and by Nevada Saad as New Manager of Debtor. That agreement, as previously noted, provides for the sale of the Debtor's business and assets subject to MLCC approval and other conditions, one of which is the execution of a management agreement authorizing the purchaser to manage and operate the business pending the closing and receipt of MLCC approval of the license transfer to the Purchaser. (This is a normal procedure in these types of transactions.);

(b) A Management Agreement signed by the same parties in their same capacities as signed the ASPA essentially providing for the Purchaser to operate and manage the business pending the closing;

(c) A "Unanimous Consent" document signed individually by Kevin and Curtis Ditmore under which they "irrevocably consent to the conveyance, transfer and assignment of all their membership voting rights to Nevada Saad, and agree that Nevada Saad shall have 100% of membership voting rights of the Company. This consent shall not be revocable under any circumstances whatsoever." It is also signed by Nevada Saad; and

(d) An Amendment to the Debtor's Operating Agreement under which Kevin and Curtis Ditmore implement the assignment of their voting rights reflected in the Unanimous Consent document, and do again irrevocably appoint Nevada Saad to be the (sole) managing member of the Debtor. This document is likewise signed by Kevin Ditmore, Curtis Ditmore, and Nevada Saad.

The clear purport of the face and substance of these latter documents is that as of and after their execution on September 9, 2011, the sole Managing Member and holder of 100% of the voting rights of the Debtor was, and, of this date, remains, Nevada Saad, and certainly neither Kevin Ditmore nor Curtis Ditmore were thereafter legally able or authorized to exercise whatever authority is given by law or the operating agreement to the Members or the Managing Member, including the authority to file a Bankruptcy Petition. So, when Kevin Ditmore represented under oath in the

6

Petition and in the Statement Regarding Authority to Sign and File Petition that he had the authority on behalf of the Debtor to file the case, he was very much in error. While given the foregoing, it is not necessary to inquire into the specifics of such, one only can wonder about the filed resolution emanating from a "special meeting duly called and held on the "1 day of 21, 2012," the Statement Regarding Authority refers to and what the details and specifics were as to the calling of that meeting, who was given notice or consented (i.e., for instance, was notice given to Nevada Saad?), etc., who was actually present, took minutes, etc., and indeed if in fact any such "meeting" ever took place or in lieu thereof if there were the required consents. The point being, however, even if it, or its equivalent did take place as sworn to, it was a nullity and ineffectual in light of previous transfers of membership and consequent authority evidenced by the recited documents.

A bankruptcy case filed by someone purportedly acting on behalf of an entity, but without authority to do so as determined under state law, is improper and dismissable. *In re ComScape Telecommunications, Inc.*, 423 B.R. 816, 829-830 (Bankr. S.D. Ohio 2010); *In re Real Homes, LLC*, 352 B.R. 221, 225 (Bankr. D. Idaho 2005); *Price v. Gurney*, 324 U.S. 100, 106 (1945). That is the situation here. Accordingly, the case should be dismissed.

The Debtor's positions in defense are not that the indicated documents were not signed, or that there were or have been any agreed to or Court mandated changes in or amendments to the cited documents, but rather that (a) they are not enforceable for lack of consideration; (b) there were subsequent breaches of the ASPA by the purchaser; (c) they were signed under duress, coercion or fraudulently induced, and (d) they are otherwise unenforceable under Michigan law.

The lack of consideration argument is somewhat meritless given the context in which they were signed and the fact that they were part and parcel of the sale of a business by the Debtor in

7

which substantial consideration flowed to the Debtor. As to any breaches of the ASPA subsequent to its signing, such does not go to, or vitiate the authority and change of member granted, though such might or could theoretically at least affect the ultimate closing of the transaction. Any such claim would be a matter for the State Court to pass upon, in any event and does not go to the narrow and immediate question of authority to file the Bankruptcy Petition that is before this Court. As to the claim of fraud or coercion, its substance is somewhat belied by the recited proceedings in the State Court <u>after</u> the execution of the documents, and particularly the participation by the Debtor and the Ditmores, by counsel, and indeed their specific stipulation to an order which had the effect of their withdrawing their effort to thwart or delay the proceedings for MLCC approval by seeking to put their own manager in place. Regardless, the referred to documents ceding control of the Debtor and authority to act were integral to, and a part and parcel of, and indivisible from, the entire sales transaction. Whatever infirmities or defenses, if any, the Debtor or Kevin or Curtis Ditmer might have (and this Court makes no findings in respect to same one way or the other) are therefore properly and only a matter to be decided by the State Court incident to proceedings, if any, which might later arise incident to a closing and consummation of the sale transaction. They do not properly go to the question of authority to file the Bankruptcy Petition before this Court, and should not be addressed by the Bankruptcy Court in a vacuum, or incident to deciding merely the authority issue.

      Accordingly, the Motion to Dismiss is granted on lack of authority grounds. An order to that effect is being entered contemporaneously.

**Signed on March 26, 2012**

                                             **/s/ Walter Shapero**

Walter Shapero
United States Bankruptcy Judge